**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**BILLY JOE LUCAS,**

**Plaintiff,**

**v.** **Case No. 3:21-cv-00253**

**WESTERN REGIONAL JAIL; and**
**C.O. ROBINSON,**

**Defendants.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

Pending before the Court are Plaintiff Billy Joe Lucas's *pro se* complaint made pursuant to 42 U.S.C. § 1983, (ECF No. 2), and Defendants' motion to dismiss. (ECF No. 18). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by standing order is referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

For the reasons that follow, the undersigned **RECOMMENDS** that Defendants' motion to dismiss, (ECF No. 18), be **GRANTED**; that the Complaint, (ECF No. 2), against the Western Regional Jail be **DISMISSED**, **with prejudice**; that the Complaint, (ECF No. 2), against C.O. Robinson be **DISMISSED**, **without prejudice,** and that this action be removed from the docket of the Court.

## I. Relevant Facts and Procedural History

At the time this action was filed, Lucas was an inmate at the Western Regional Jail

("WRJ"). On April 19, 2021, Lucas filed the instant action alleging violations of his constitutional rights pursuant to 42 U.S.C. § 1983. (ECF No. 2). According to Lucas, while at the WRJ he was attacked by another inmate with known mental health issues. (*Id.* at 4). After the attack, Lucas reported to Defendant C.O. Robinson ("Robinson") that he was experiencing symptoms of head trauma such as headaches, dizziness, anxiety, extreme mood swings, depression, and PTSD, but Robinson twice denied Lucas medical care. (*Id.*). Lucas claims that Robinson threatened to beat him up if he attempted to get medical care, causing Lucas to fear going to sleep and deterring him from seeking medical attention. (*Id.*). He further alleges that he was treated inhumanely and now fears for his life, continues to have difficulty sleeping, and experiences night sweats, nightmares, anxiety, fear, and memory loss, and feels "jumpy." (*Id.* at 4–5). He notes that he recently forgot his Social Security number for the first time in his life and his "old lady" has noticed a change in him. (*Id.* at 5). He complains that Robinson still works at WRJ. (*Id.*). For relief, Lucas asks the Court "to fix this place so that this isn't allowed to happen to other people," help him obtain needed psychiatric care, and "help others to come forward with [their] stories and not live in fear or worry if they will die or have long lasting effects of abuse or medical conditions to worsen because of this [negligence]." (*Id.*). He seeks assistance from the State and "the D.O.C." to "fix these crimes against humanity," and emphasizes that he is "[appalled] at the way this place is run." (*Id.* at 6).

On July 15, 2021, Defendants filed a motion to dismiss Lucas's complaint along with a memorandum of law. (ECF Nos. 18, 19). They contend that the complaint should be dismissed because Lucas has failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). (ECF No. 19 at 3). They further argue that dismissal is warranted as to the WRJ, because the WRJ is a building rather than a person

subject to suit under § 1983. (*Id.* at 6). Additionally, Defendants posit that they are entitled to qualified immunity as Lucas does not allege that they violated any clearly established law. (*Id.* at 7–8).

On July 30, 2021, Lucas filed a response opposing Defendants' motion. (ECF No. 21). He urges the Court not to dismiss his complaint, emphasizing that "this story needs to be told, there are huge injustices going on [at WRJ] daily." (ECF No. 21 at 1). He reiterates the factual basis for his claim and adds that the same inmate who attacked him assaulted other individuals after him. (*Id.*). He claims he was asked three times not to press charges. Prison officials became angry at him when he expressed his wish to do so and they refused to allow him to give his entire statement. (*Id.*). He further explains that his "head was bounced off a concrete wall" as captured in a video recording of the incident. (*Id.*). He posits that he had a concussion which was ignored by Robinson, who received no punishment, and again states that his interactions with Robinson since have been frightening and discouraged him from seeking medical treatment. (*Id.* at 2). Lucas asserts that he has filed numerous grievances which have had no effect and that prison officials "treat you worse than a dog here." (*Id.* at 2–3). Lucas alludes to examples of other inmates who also have concerns, including an inmate who received the wrong medicine. (*Id.* at 3). He believes that prison officials deliberately assigned Robinson to work near him, leading to tense interactions that left him fearful. (*Id.*). He repeats his desire to "stop this from happening to others" and requests the Court's help in fixing the problems at WRJ. (*Id.* at 4). He also asks for help with the process of obtaining subpoenas. (*Id.*).

On August 23, 2021, the undersigned ordered a status conference and motion hearing to take place on September 8, 2021. (ECF No. 24). Lucas was sent a copy of the Order at the address on record with the Clerk's office, but it was returned as undeliverable.

According to the return label, Lucas was no longer at the WRJ and had not left a forwarding address, (ECF No. 28), despite the fact that he was reminded multiple times of his obligation to promptly inform the Court of any change to his address, (ECF Nos. 4, 8, 24).

On August 26, 2021, Defendants provided a supplemental brief in support of their motion to dismiss. (ECF No. 27). Therein, they contend that Lucas was released from custody on July 30, 2021, and thus his claims are now moot. (*Id.* at 2). They ask again for the Court to grant their motion and dismiss the complaint. (*Id.* at 3). On September 8, 2021, the undersigned conducted the motion hearing. (ECF No. 29). Counsel for Defendants appeared in person, but Lucas was not present, and he has made no effort to contact the Court since his release from the WRJ.

## II. **Standard of Review**

Defendants move to dismiss the complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and also on the basis that the claims are now moot. A motion under Rule 12(b)(6) tests the sufficiency of the complaint. *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007) (stating to survive a 12(b)(6) motion, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face"). Accordingly, the Court will assume that the facts alleged in the amended complaint are true and will draw all reasonable inferences in Plaintiff's favor as the nonmoving party. *Burbach*, 278 F.3d at 405–06. The purpose of Rule 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). "Furthermore, when as here, a Rule 12(b)(6) motion is testing the sufficiency of a civil rights complaint, 'we must be especially solicitous of the wrongs

alleged' and 'must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief *under any legal theory which might plausibly be suggested by the facts alleged.*'" *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999) (quoting *Harrison v. United States Postal Serv.,* 840 F.2d 1149, 1152 (4th Cir.1988)).

While the Court "take[s] the facts in the light most favorable to the [P]laintiff, ... [the Court] need not accept the legal conclusions drawn from the facts," and "need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)). A complaint fails to state a claim when, accepting the plaintiff's well-pleaded allegations as true and drawing all reasonable inferences, the complaint lacks "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A pleading that "offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do" and a complaint will not "suffice if it tenders naked assertions devoid of further factual enhancements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted).

Courts are required to liberally construe *pro se* complaints, such as the complaint filed herein. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, even under this less stringent standard, the complaint still must contain sufficient factual allegations to support a valid legal cause of action. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). The Court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), construct the plaintiff's legal arguments for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993),

or "conjure up questions never squarely presented" to the Court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985).

## III. <u>Discussion</u>

Lucas's complaint is filed pursuant to 42 U.S.C. § 1983, which provides a remedy to parties who are deprived of federally protected civil and constitutional rights by persons acting under color of any state "law, statute, ordinance, regulation, custom, or usage." 42 U.S.C. § 1983. Congress enacted § 1983 "to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a state and represent it in some capacity, whether they act in accordance with their authority or misuse it." *Monroe v. Pape,* 365 U.S. 167, 171-172 (1961), *overruled on other grounds by* 436 U.S. 658.

In order to state a cause of action under § 1983, a plaintiff must present facts showing that: (1) a person deprived him or her of a federally protected civil right, privilege or immunity and (2) that the person did so under color of state law. 42 U.S.C. § 1983; *American Mfr. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999) ("To state a claim for relief in an action brought under § 1983, respondents must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law."). If either of these elements is missing, the complaint fails to state a claim for relief under § 1983. *Sullivan,* 526 U.S. at 50.

### *A. The WRJ is not a Person Under Section 1983*

In *Will v. Mich. Dept. of State Police,* the Supreme Court of the United States ("Supreme Court") considered "the question whether a State, or an official of the State while acting in his or her official capacity, is a 'person' within the meaning of … § 1983."

*Will*, 491 U.S. 58, 60 (1989). Examining the language and purpose of the statute, the Supreme Court ultimately concluded that Congress did not intend to subject States to liability for deprivations of civil liberties, when such suits would have been barred by the States' sovereign immunity. *Id.* at 66. The holding in *Will* applied not only to lawsuits against the State, itself, but also to suits against "public entities and political subdivisions" that were an "arm or alter ego" of the State. *Maryland Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d 255, 260 (4th Cir. 2005) (quoting *Moor v. Alameda County,* 411 U.S. 693, 717 (1973)).

The law is well settled that regional jails in West Virginia, such as the WRJ, are arms of the State of West Virginia. *See Hall v. Pszczolkowski*, No. 5:14CV150, 2015 WL 6742107, at *3 (N.D.W. Va. Nov. 4, 2015) (holding that "state detention facilities are 'arms of the state'") (citing *Preval v. Reno*, 203 F.3d 821 (Table), No. 99-6950, 2000 WL 20591, *1 (4th Cir. Jan. 13, 2000) (unpublished per curiam)); *Kinder v. PrimeCare Med., Inc.,* No. 3:13–31596, 2015 WL 1276748, at *2 (S.D.W. Va. Mar. 19, 2015) (dismissing the WRJ from § 1983 suit on Eleventh Amendment grounds); *Skaggs v. W. Reg'l Jail,* No. 3:13–3293, 2014 WL 66645, at *1, *4 (S.D.W. Va. Jan. 8, 2014) (dismissing the WRJ from § 1983 suit and adopting finding that the WRJ is arm of the State for Eleventh Amendment purposes). Therefore, the undersigned **FINDS** that the WRJ, as an arm of the State, is not a "person" subject to suit under § 1983 and is entitled to dismissal on this ground. *See Roach v. Burch,* 825 F. Supp. 116 (N.D.W. Va. 1993); *Will,* 491 U.S. at 109; *Cantley v. Western Regional Jail and Correctional Facility Authority,* 728 F. Supp.2d 803 (S.D.W. Va. 2010) (finding that the West Virginia Regional Jail Authority and Correctional Facility is not a "person" for purposes of a claim for money damages under § 1983.); *Lewis v. Western Reg'l Jail,* No. 3:11–cv–01016, 2012 WL 3670393, at *5 (S.D.W. Va. July 24,

2012) (recognizing that "the WRJ is not a person subject to suit under § 1983"), *report and recommendation adopted by* 2012 WL 3726874 (S.D.W. Va. Aug. 27, 2012); *Dement v. Summers Cnty. Courthouse,* No. 5:13–cv–08899, 2015 WL 461560, at *3 (S.D.W. Va. Feb. 3, 2015) (finding that Southern Regional Jail was not subject to § 1983 suit).

The WRJ is also entitled to dismissal based on the sovereign immunity provided by the Eleventh Amendment to the United States Constitution, which states in relevant part: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Although the Eleventh Amendment refers only to suits by citizens of other states, the Supreme Court has construed the Amendment to "establish that an unconsenting State is immune from suits brought in federal court by her own citizens as well as by citizens of another state." *Port. Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (2009) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)) (markings omitted). The immunity created by the Amendment protects both the State itself and its agencies, divisions, departments, officials, and other "arms of the State." *Taylor v. Ozmint*, Case No. 0:10–50–HMH–PJG, 2011 WL 286133, at *2 (D.S.C. Jan. 7, 2011) (citing *Will,* 491 U.S. at 70); *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1977) ("[I]t has long been settled that the reference [in the Eleventh Amendment] to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities.").

Three narrow exceptions to Eleventh Amendment immunity exist. *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 248-49 (4th Cir.2012). First, the State may waive its right to immunity and consent to suit. *Lapides v. Bd. of Regents Univ. Sys. of*

*Ga.*, 535 U.S. 613, 618 (2002). Such a waiver must be express, or in other words, the waiver must be an "unequivocal statement of the state's intention to subject itself to suit in federal court." *See Regueno v. Erwin*, No. 2:13-CV-00815, 2013 WL 1837881, at *3 (S.D.W. Va. May 1, 2013) (quoting *Westinghouse Elec. Corp. v. W. Va. Dept. of Highways*, 845 F.2d 468, 471 (4th Cir.1988)) (markings omitted); *and Price v. W. Virginia Air Nat'l Guard, 130TH Airlift Wing*, No. 2:15-CV-11002, 2016 WL 3094010, at *2-3 (S.D.W. Va. June 1, 2016) (holding that insurance provisions contained in the West Virginia Code provide a limited waiver of the State's sovereign immunity in state courts; however, that waiver does not extend to suits brought against the State in federal court). Historically, the State of West Virginia has not waived its sovereign immunity in this type of suit, and there is no indication that the State would do so now. *See Kinder*, 2015 WL 1276748, at *7; *Skaggs*, 2014 WL 66645, at *5; *Chafin v. W. Reg'l Jail*, No. 3:13-cv-01706, 2013 WL 3716673, at *4 (S.D.W. Va. July 12, 2013); *Thompson v. W. Va. Reg'l Jail/Corr. Auth.*, No. 3:13-1897, 2013 WL 3282931, at *4 (S.D.W. Va. June 27, 2013); *Meadows v. Huttonsville Corr. Ctr.*, 793 F. Supp. 684, 686 (N.D.W. Va. 1992). Consequently, the waiver exception does not apply here.

Second, "Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and 'act[s] pursuant to a valid grant of constitutional authority.'" *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) (quoting *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73). In *Will*, the Supreme Court concluded that Congress did not have the States in mind as potential defendants when it imposed liability on "persons" under § 1983. 491 U.S. at 65. Noting that ordinary rules of statutory construction required Congress to make any alteration of the "usual constitutional balance between the States and the Federal Government … unmistakably

clear in the language of the statute," the Supreme Court observed that had Congress intended to include States as "persons" for the purposes of § 1983, it would have explicitly done so. *Id.* at 65 (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 242 (1985)). Two years later, the Supreme Court reaffirmed its holding in *Will* and explained that "interpreting the words '[e]very person' to exclude the States accorded with the most natural reading of the law, with its legislative history, and with the rule that Congress must clearly state its intention to alter 'the federal balance' when it seeks to do so." *Hafer v. Melo*, 502 U.S. 21, 26 (1991) (quoting *Will*, 491 U.S. at 65). Thus, Congress has not abrogated Eleventh Amendment sovereign immunity in the context of a § 1983 action. *See Quern v. Jordan*, 440 U.S. 332, 340 (1979).

As to the third and final exception, "the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (citing *Ex Parte Young*, 209 U.S. 123, (1908)); *Freeland v. Ballard*, 6 F. Supp.3d 683, 694 (S.D.W. Va. 2014) ("Pursuant to the Eleventh Amendment, a federal court may enjoin state officials to conform their future conduct to federal law, which is distinguishable from a retroactive monetary award paid from State funds."). "The *Ex Parte Young* exception is directed at 'officers of the state [who] are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings'" to enforce an unconstitutional act against affected parties. *McBurney v. Cuccinelli, II*, 616 F.3d 393, 399 (4th Cir. 2010) (citing *Ex Parte Young*, 209 U.S. at 155-56). The state officer being sued must have "proximity to and responsibility for the challenged state action" before the exception can be invoked. *Id.* Moreover, the exception "applies only to prospective relief, does not permit judgments against state officers declaring that they violated federal

law in the past, and has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (citations omitted). Because the WRJ is not a state officer, but rather a state entity, the third exception to Eleventh Amendment immunity is likewise inapplicable. *Lee-Thomas*, 666 F.3d at 249 (recognizing that lawsuit must name state official as defendant, not a state agency); *Chafin*, 2013 WL 3716673, at *5 (recognizing same); *Thomas v. Nakatani*, 309 F.3d 1203, 1208 (9th Cir. 2002) ("*Ex Parte Young* doctrine creates a fiction by allowing a person to enjoin future state action by suing a state official for prospective injunctive relief rather than the state itself. Even so, the Supreme Court has emphasized the importance of respecting this fiction"). In sum, since none of the exceptions apply, the undersigned **FINDS** that the WRJ is shielded by the Eleventh Amendment's sovereign immunity from Plaintiff's § 1983 case and is entitled to dismissal on this ground, as well. Given that the WRJ is immune from suit in this case, the undersigned need not address Defendants' remaining argument regarding exhaustion.

### *B. The Claims Against C.O. Robinson are Moot*

Defendants further argue that Lucas's release from the WRJ renders moot his claims against C.O. Robinson, because Lucas seeks only injunctive relief and not monetary damages. (ECF No. 27 at 2–3). As explained below, Defendants are correct.

As a prerequisite to the exercise of federal jurisdiction, the complaint before the Court must present an actual case or justiciable controversy. "To be justiciable under Article III of the Constitution, the conflict between the litigants must present a 'case or controversy' both at the time the lawsuit is filed and at the time it is decided. If intervening factual ... events effectively dispel the case or controversy during pendency of the suit, the

federal courts are powerless to decide the questions presented." *Ross v. Reed*, 719 F.2d. 689, 693-94 (4th Cir. 1983). "The requisite personal interest that must exist at the commencement of the litigation … must continue throughout its existence." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) (citations omitted). "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). Defendants are correct that "as a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there." *Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009). "The reasons for finding mootness in such a context are clear. Once an inmate is removed from the environment in which he is subjected to the challenged policy or practice, absent a claim for damages, he no longer has a legally cognizable interest in a judicial decision on the merits of his claim." *Incumaa v. Ozmint*, 507 F.3d 281, 287 (4th Cir.2007).

An exception to the mootness doctrine exists for claims that are "capable of repetition, yet evading review." *Federal Election Commission v. Wisconsin Right to Life, Inc.*, 551 U.S. 449, 462 (2007). However, "[j]urisdiction on the basis that a dispute is capable of repetition, yet evading review is limited to the exceptional situation in which (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Incumaa*, 507 F.3d at 289 (internal quotation marks and citations omitted). While a prisoner's transfer or release moots a request for declaratory and injunctive relief, it does not moot a request for monetary damages. *See Taylor v. Rogers*, 781 F.2d 1047, 1048 n. 1 (4th Cir.1986); *see also Salmons v. W. Reg'l Jail Auth.*, No. CV 3:18-1447, 2019 WL 5616916, at *4 (S.D.W. Va. Oct. 30, 2019).

Lucas does not seek monetary compensation in his complaint. He asks the Court "to fix this place so that this isn't allowed to happen to other people," help him obtain needed psychiatric care, and "help others to come forward with [their] stories and not live in fear or worry if they will die or have long lasting effects of abuse or medical conditions to worsen because of this [negligence]." (ECF No. 2 at 5). He also expresses a desire that the Court "stop this from happening to others" and requests the Court's help in fixing the problems at WRJ. (ECF No. 21 at 4). While it is unclear what exactly Lucas wishes the Court to do, he unequivocally does not seek monetary damages for his injuries. *See Swanson v. Bledsoe*, No. CIV A 104CV170, 2007 WL 205636, at *3 (N.D.W. Va. Jan. 24, 2007) (denying plaintiff's claim that his complaint was not mooted by transfer due to his request for monetary damages where the plaintiff's complaint did not specifically request monetary damages); *Camacho v. Beers*, Civil Action No. 16-1644, 2018 WL 6618410, at *2–*3 (W.D. Pa. Dec. 18, 2018) (finding plaintiff's statement in initial grievance "asking for relief as allowed by law" did not "request the specific relief of monetary compensation"). Moreover, Lucas did not contest Defendants' contention that he is seeking only injunctive relief. Accordingly, the undersigned **FINDS** that Lucas's complaint requests only equitable relief and is therefore rendered moot by his release from WRJ.

As noted, there is an exception to the mootness doctrine for cases that are "capable of repetition, yet evading review." *Wisconsin Right to Life, Inc.*, 551 U.S. at 462. However, to be entitled to utilize this exception, Lucas must show, among other things, that there "is a reasonable expectation that [he] will be subject to the same action again." *Incumaa*, 507 F.3d at 289. Lucas does not attempt to make such a showing, nor would he be likely to succeed assuming he did endeavor to establish entitlement to this exception. As Lucas

has been released from the facility where the complained of actions took place, to be again subject to the same disparate conditions would require that he again be accused of a crime, and additionally be assigned to custody within the WRJ. This chain of events is far too speculative to establish a reasonable expectation that Lucas will again face the discriminatory treatment he alleges occurred at WRJ. *See e.g. Slade v. Hampton Roads Reg'l Jail,* 407 F.3d 243, 249 (4th Cir. 2005) ("Because we presume that [the petitioner] will abide by the criminal laws of Virginia in the future, we do not believe there is a reasonable probability that he will return to the Jail. ... Accordingly, [the petitioner's] claim for injunctive relief is moot.").

As it is clear from the face of Lucas's complaint that he seeks only equitable relief, the undersigned **FINDS** that his release from WRJ has mooted his claims because there is no longer a live or justiciable controversy sufficient to satisfy the requirements of Article III. However, while dismissal is proper, the statute of limitations may not yet have expired as to Lucas's claims against Robinson. Given that Lucas's whereabouts are currently unknown, and he is unaware of Defendants' mootness argument, the undersigned **FINDS** that Lucas's option to pursue a monetary claim against Robinson should not be foreclosed at this time. Accordingly, the undersigned **RECOMMENDS** that Lucas's complaint against C.O. Robinson be dismissed without prejudice.

## IV. Proposal and Recommendations

For the reasons set forth above, , the undersigned **RECOMMENDS** that Defendants' motion to dismiss, (ECF No. 18), be **GRANTED**; that the Complaint, (ECF No. 2), against the Western Regional Jail be **DISMISSED**, **with prejudice**; that the Complaint, (ECF No. 2), against C.O. Robison be **DISMISSED**, **without prejudice,** and that this action be removed from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiff and counsel of record.

**FILED:** September 22, 2021

Cheryl A. Eifert
United States Magistrate Judge